1
2
3
4
5
6
7



FILED & ENTERED

MAY 08 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Gonzalez DEPUTY CLERK

8

## UNITED STATES BANKRUPTCY COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

## SAN FERNANDO VALLEY DIVISION

11

12   In re:

13   Superior National Insurance Gr

14

15                                    Debtor(s).

16

17   _____

18    The Litigation Trust for the Trust
     Beneficiaries of SNTL Corporation and
19   Certain Affiliates

20
                                    Plaintiff(s),
21        v.

22

23    JP MORGAN CHASE,  JP MORGAN
     CHASE BANK N.A.,
24

25                                Defendant(s).

26

27

28

CHAPTER 11

Case No.:  1:00-bk-14099-GM
Adv No:   1:13-ap-01099-GM

**MEMORANDUM OF OPINION GRANTING IN
PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT**

Date:  April 22, 2014
Time:  10:00 a.m.
Courtroom:   303

Defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. (collectively "Chase") bring a motion to dismiss the amended complaint ("AC") in this adversary proceeding.

### Factual Background

SNTL Holdings Corp. ("SNTL") and its non-insurance subsidiaries (collectively with SNTL, the "Debtors") filed for chapter 11 relief on April 26, 2000 (# 00-bk-14099-GM).  Also in 2000, SNTL's five insurance subsidiaries were seized and placed into conservatorships by state agencies in California and New York.

The Debtor's primary assets were over $1 billion of net operating loss carryforwards ("NOLs").  The largest claim against the Debtors was approximately $100 million of senior debt held by a lender group.  Chase held about $19 million of this senior debt.

On June 21, 2002, the Debtors' Second Amended Chapter 11 Joint Plan of Reorganization as amended (the "Plan") was confirmed.  Bankruptcy case, dkt.709-1; Exhibit 4 to Declaration of Glenn M. Kurtz filed in support of the Motion.  The Plan was structured to realize value from the NOLs, and thus was shaped by the requirements of tax law.  In essence, Chase acquired all equity in SNTL so that Chase could use the NOLs to offset its tax liability and then pay most of the value of those tax savings to a trust created for the benefit of the Debtors' stakeholders (the "Trust").

Specifically, the Plan provided that Chase would receive 100% of the common stock of SNTL (which would be converted to a Delaware LLC with the legal name of Cresta).  Under a Second Tax Sharing Agreement ("STS Agreement") executed in connection with the Plan, Chase was identified as the sole owner of "all [NOLs], tax

attributes and other income tax benefits attributable to or generated by the Parent

[SNTL] or the Subsidiaries."

    Chase issued an Earn Out Note ("EON"; Exhibit 3 to Kurtz Dec.) to the Trust.

The EON provided for Chase to make payments to the Trust under a formula set forth in

the Plan and the EON as the "NOL Utilization Value" (which was essentially designed to

measure the benefit of the NOLs to Chase.)  The NOL Utilization Value is defined in the

Plan as:

> The excess of (a) the amount of the SNTL Group's NOLs in existence and
> available immediately after the Effective Date (after taking into account
> adjustments required by reason of consummation of the Plan, including
> reductions required pursuant to Sections 108(b) and 382(l)(5) of the IRC) and
> subsequently utilized in JPMC's federal income tax return multiplied by the
> applicable federal income tax rate or rates with respect to the tax year or years in
> which such NOLs are utilized, over (b) the Turnaround Amount.

Plan at p. 18:1-7.

    The Turnaround Amount was in turn defined as:

> The amount determined by the SNTL Acquirer [JPMorgan Chase Bank] in its
> reasonable discretion, based on advice from KPMG, which is equivalent to the
> estimated future tax liability of, or arising from the ownership of, the SNTL Group,
> excluding (i) taxes attributable to operating earnings of the business of
> Reorganized SNTL (including the Other Subsidiaries)(the "Reorganized SNTL
> Business") and (ii) taxes attributable to the pre-tax economic profit from a sale or
> other disposition of the stock of Reorganized SNTL or the Reorganized SNTL
> Business.

Plan at p. 23:13-18.

The Complaint

    On May 12, 2013, the Trust filed a complaint commencing this adversary

proceeding (the "Complaint").  The Complaint alleged that Chase has had the benefit of

over $2.2 billion in NOL's from the Debtors, which have resulted in tax savings to Chase

of over $775 million, yet Chase had not paid anything to the Trust under the EON.  The

Complaint sought recovery on:

> Count One:  Breach of Fiduciary Duty
> Count Two:  Breach of Contract
> Count Three:  Breach of Implied Covenant of Good Faith and Fair Dealing
> Count Four:  Anticipatory Breach of Contract
> Count Five:  Unjust Enrichment
> Count Six: Reformation of the Plan

Initial Motion to Dismiss

     Chase brought a motion to dismiss the Complaint.  After extensive briefing and a

hearing, on December 19, 2014 this Court entered an order and a memorandum of

opinion (i) denying the motion as to counts two, three, four and six, (ii) granting the

motion as to count one without leave to amend, and (iii) granting the motion as to count

five with leave to amend to a claim for restitution regarding Later Recognized NOLS and

Turned-Around NOLS (each as defined below).

Amended Complaint

     The Trust filed the AC on January 7, 2014.  The AC has the same counts as the

Complaint, except Count Five has been changed to a claim for restitution as directed by

the Court.  These Counts are based on the following allegations contained in the AC

(which are quite similar if not identical to the allegations in the original Complaint):

     Chase falsely inflated the Turnaround Amount to reduce its payments under the

EON.  Chase has provided information to the Trust indicating that through 2017, Chase

will use $1.35 billion of NOLs relating to losses recognized prior to the effective date of

the Plan ("Pre-Effective Date NOLs"), with the vast majority used in 2002-2006.  This

use resulted in tax savings of $469 million, although Chase has calculated a

Turnaround Amount of $370 million that will substantially reduce the NOL Utilization

Value to be paid to the Trust under the EON.  While the audit of Chase's tax returns for

2003, 2004 and 2005 has been completed, Chase is taking the position that no payment

is due now on the $257 million of tax benefit that Chase received from the $737 million

of Pre-Effective Date NOLs used in these years.  Chase has managed its taxes to

maximize its benefit from the NOLs at the expense of SNTL's stakeholders through its

management of discharge cancellation of indebtedness (COD), misapplication of COD

from California Insurance Guaranty Association ("CIGA"), treatment of reserve

recapture, and lack of proper tax planning to mitigate the trigger of Excess Loss

Accounts.

Additionally, Chase has received the advantage of $900 million of NOLs that

were based on pre-petition operations (i.e., policies issued before the Effective Date),

but were not known to exist at the time the Plan was negotiated and were not included

in the NOL Utilization Value (the "Later Recognized NOLs").  In the post-Effective Date

period, the insurance subsidiaries did not issue new policies, but did increase their loss

reserves on existing policies, thus generating immediate tax savings for Chase.  These

$895 million of Later Recognized NOLs have generated approximately $300 million in

tax savings to Chase.  Even if, as Chase asserts, these NOLs provide only temporary

benefits, the time benefit of this $300 million in savings over multiple years amounts to

more than $130 million of value to Chase. (The Plan does not mention additions to the

reserves in the post-Effective Date period or allocate the resulting NOLs.  Had the

parties been aware of the possibility of additional reserves being created in the post-

Effective Date period, they would have provided for compensation from Chase to the

Trust to prevent a windfall by Chase.)  Chase received $68 million in tax benefit from

the $195 million of Later Recognized NOLs Chase used in years 2003-2005: none of

this savings will be passed on to the Trust.

Furthermore, the Plan does not require Chase to pay interest on the portion of

the NOLs that are ultimately turned around (and thus not included in the NOL Utilization

Value), although Chase will benefit from the time value between utilization and

turnaround.  Chase received millions of dollars of time benefit on NOLs that were

utilized by Chase but later subject to turnaround.  (The Court will refer to these NOLs as

"Turned-Around NOL's").

Motion

Chase filed this motion to dismiss the AC (the "Motion") on February 7, 2014, the

Trust filed an opposition to the Motion (the "Opposition") on March 4, 2014 and Chase

filed a reply to the Opposition (the "Reply") on March 21, 2014.

## Legal Standard for Motion to Dismiss

This motion to dismiss is brought under Fed. R. Civ. P. 12(b)(6), which applies to

this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b).

A motion to dismiss [pursuant to Rule 12(b)(6)] will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citations omitted).
"We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the non-moving party." *Manzarek [v. St. Paul Fire & Marine Ins. Co.],* 519 F.3d [1025,] 1031 [(9th Cir. 2008)]. Although factual allegations are taken as true, we do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W.*

*Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citation omitted); *accord Iqbal*, 129 S. Ct. at 1950.

*Fayer v. Vaughn,* 649 F.3d 1061, 1064 (9th Cir. 2011).  The court likewise is not required to accept as true allegations that are contradicted by documents referred to in the complaint.  *Twombly*, 550 U.S. at 555-56; *Steckman v. Hart Brewing, Inc.,* 143 F.3d 1293, 1295-96 (9th Cir. 1998).

## Count One:  Breach of Fiduciary Duty

Complaint

The Plan and the EON reflect a joint venture between Chase and the Trust to realize and share the value of SNTL's NOLs.  This joint venture imposes a fiduciary duty on Chase.  Chase has breached this fiduciary duty by managing SNTL's tax attributes to benefit Chase at the expense of the Trust and SNTL's other stakeholders, as described above.

Motion

This Court dismissed this count without leave to amend, yet the Trust simply put it into the AC exactly as it was in the Complaint.  This count should be dismissed and numerous allegations supporting this count should be stricken.  (These allegations are listed in note 4 of the Motion (pp. 9-10).)  Without Count One, these allegations are irrelevant to the remaining counts and will only serve to confuse the issues in dispute, unnecessarily broaden the scope of this case and risk undue expansion of discovery. Fed. R. Civ. P. 12(f) permits the Court to strike "any redundant, immaterial, impertinent, or scandalous matter."

Opposition

This count is in the AC solely for the purpose of appeal, which is permissible.

While *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) holds that claims

dismissed with prejudice need not be repled to be preserved for appeal, it does not

prohibit repleading such claims.  *Taylor ex rel. Thomson v. Zurich Am. Ins. Co.,* 2013

U.S. Dist. LEXIS 46800 (D. Ariz. Apr. 1, 2013).

The "drastic remedy" of striking the allegations in support of Count One is not

warranted.  There is no confusion over the issues at dispute and Chase has

demonstrated its ability to object if discovery exceeds the scope of this case.  The

allegations Chase seeks to strike support other counts and provide background

information bearing on the subject matter of this litigation.  In sum, striking these

allegations would prejudice the Trust; not striking them would not prejudice Chase.

Reply

The Ninth Circuit in *Lacey* explicitly rejected the Trustee's argument that this

dismissed claim should be retained for purposes of appeal.  The *Taylor* case cited by

the Trustee is not binding and it is contrary to the weight of Ninth Circuit authority

precluding a plaintiff from including a claim dismissed with prejudice in an amended

complaint.  Repleading dismissed claims wastes the resources of both defendants and

courts that must address them, and accordingly has been held to be sanctionable.

The Court should also strike the allegations supporting this breach of fiduciary

duty claim.  References to fiduciary duty and joint venture are confusing the context of

the parties' contractual relationship.  They are also immaterial and impertinent under

Rule 12(f).  Incorrect allegations of fiduciary duty do not provide proper background

information.  The allegations in paragraphs 86 and 94 about Chase's purported duty to

maximize the value of the NOLs are not relevant to Chase's contractual obligations now

before the Court.  The Trustee's Opposition does not explain why terming the EON an

"equity-like instrument" is relevant to its remaining claims; it is merely confusing.  The

Trust will not be prejudiced by eliminating this irrelevant material, except by the

inconvenience of redrafting the AC.


Analysis

Count One should be removed from the Trust's complaint in this proceeding.

*Lacey* clearly holds that claims dismissed with prejudice and without leave to amend

need not be repled in a subsequent complaint in order to be preserved for appeal.  I will

dismiss it again, although "with prejudice and without leave to amend" so that it clearly

falls within the *Lacey* safe harbor for appeal.

With respect to Chase's motion to strike the allegations supporting Count One

under Fed. R. Civ. P. 12(f):

> Rule 12(f) provides that a court "may order stricken from any pleading . . . any
> redundant, immaterial, impertinent, or scandalous matter." "(T)he function of a
> 12(f) motion to strike is to avoid the expenditure of time and money that must
> arise from litigating spurious issues by dispensing with those issues prior to trial. .
> . ." *Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir. 1983).
> "'Immaterial' matter is that which has no essential or important relationship to the
> claim for relief or the defenses being pleaded." 5 Charles A. Wright & Arthur R.
> Miller, Federal Practice and Procedure § 1382, at 706-07 (1990). "'Impertinent'
> matter consists of statements that do not pertain, and are not necessary, to the
> issues in question." Id. at 711. Superfluous historical allegations are a proper
> subject of a motion to strike. *See, e.g., Healing v. Jones*, 174 F. Supp. 211, 220
> (D. Ariz. 1959).

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)(reversed on other

grounds, *Fogerty V. Fantasy, Inc.*, 510 U.S. 517 (1994)).  As a general matter, Rule

12(f) motions are disfavored.  *See, e.g., Abney v. Alameida*, 334 F. Supp. 2d 1221, 1234 (S.D. Cal. 2004) (*citing Cairns v. Franklin Mint Co*., 24 F. Supp. 2d 1013, 1037 (C.D. Cal. 1998)).  They are generally denied unless the allegations have no possible relation to the subject matter. *See, e.g., Colaprico v. Sun Microsystems, Inc.,* 758 F. Supp. 1335, 1339 (N.D. Cal. 1991); *Code Rebel, LLC v. Aqua Connect, Inc*., 2014 U.S. Dist. LEXIS 2824 (C.D. Cal. Jan. 3, 2014).

Some of the allegations Chase moves to strike directly and specifically reference a breach of fiduciary count that is no longer part of this proceeding.  These allegations, which may be struck without prejudice to the Trust, are, in addition to Count One itself: (i) the reference to Count One in paragraph (b) of the prayer for relief, which should be omitted, (ii) the use of "fiduciary" in the first sentence of the AC, which can be remedied by striking "fiduciary and contractual" leaving an unmodified "obligations", (iii) the reference to "joint venture" in the ¶19 of the AC which can be replaced with a more general word or phrase, and (iv) the reference to "co-venturer" in ¶20 of the AC, which can be replaced with a more general word or omitted from the paragraph.

The remaining allegations that Chase moves to strike may support remaining counts in this proceeding or provide background information.  (These are ¶19, part of the first sentence of ¶20, the first sentence of ¶86, and part of the first sentence of ¶94.) It cannot be said that these allegations have no possible relation to the subject matter, and if ultimately irrelevant will not be considered.  Given the liberal standards for pleadings, the disfavor with which motions to strike are viewed and the fact the striking this material may prejudice the Trust, these allegations in the AC will not be struck.

## **Count Five: Unjust Enrichment**

Complaint

Chase has received the benefit of $895 million of Later Recognized NOLs, enabling Chase to reduce its tax liability by approximately $313 million.  Even if these benefits are limited in term and Chase will ultimately be required to recognize income in the future, the time value of this money is over $130 million.

With respect to the Turned-Around NOLs, Chase receives substantial time value between receiving the tax benefit of these NOLs and the turn around.  Under the Plan, however, Chase does not pay interest to the Trust to compensate for this time value.

Through its use of the Later Recognized NOLs and the time value of the Turned-Around NOLs, Chase has been unjustly enriched at the expense of the Trust and its beneficiaries.

Motion

Black letter law denies a claim for restitution where there is a valid contract between the parties covering the subject matter.  Subject matter should be interpreted broadly as referring to the general subject matter of the contract, rather than any specific term.  Both of the AC's grounds for restitution are covered by the general subject matter of the Plan.

The Plan provides that the Trust be paid interest only on Distributable NOL Utilization Value.  Plan at 28.  Interest on the non-distributable portion of the NOLs is covered by the Plan by its exclusion from amounts due to the Trust.  As a matter of law, Chase cannot be unjustly enriched by paying interest in accordance with the express provisions of the Plan.

Unjust enrichment on the Later Recognized NOLs is also wrong – the Plan unambiguously excludes these NOLs from the NOL Utilization Value by covering only NOLs "in existence and available immediately after the Effective Date."  Plan at §1.1. The drafting history of the Plan shows that an earlier, broader definition of NOL Utilization Value, which would have included these Later Recognized NOLs, was ultimately replaced by the current, narrower definition.

Opposition

Under Ninth Circuit case law, a contract that does not provide for the specific recovery sought does not bar a claim for restitution.  Further, when the parties dispute the scope of the subject matter of a contract, it is improper to dismiss a restitution claim at the pleading stage.

Chase claims, contrary to earlier expectations, that the Turnaround Amount will be substantial and will wipe out most of the NOL Utilization Value.  If true, then Chase still has received hundreds of millions of dollars of time value of money.  The Plan neither anticipated nor addressed this situation.  Further, a reading of the Plan and the EON provisions beyond Chase's carefully selected excerpts indicates that the Plan and EON do not address interest on the Turned-Around NOLs.

The change in definition of the NOLs to be included in Utilization Value was likely intended to exclude NOLs from post-confirmation operations, not the Later Recognized NOLs arising from pre-confirmation operations.  The drafting history and intent of this provision cannot be determined merely from the term sheets cited by Chase in isolation, but require discovery and a full exposition of the evolution of the Plan and the parties' negotiations.

Chase's interpretation of the Plan – that it was intended to allow Chase to retain hundreds of missions of dollars of benefit from the Later Recognized NOLS and the time value of the Turned-Around NOLs, as well as a $30-60 million fee– is implausible.

Reply

As the Court has recognized, a restitution claim cannot be maintained where there is a valid contract covering the same subject matter.  "Subject matter" must be broadly defined, lest parties use restitution to rewrite contracts.  *Leyvas v. Bank of Am. Corp. (In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig.*), 601 F. Supp. 2d 1201, 1220-1221 (S.D. Cal. 2009), the only authority cited by the Trust for its argument that "subject matter" should be narrowly defined is not binding on this Court and is factually distinguishable because the unjust enrichment claims were based on pre-contractual misrepresentations.

Contrary to the Trust's assertion that it is improper to dismiss a restitution claim at the pleading stage, courts routinely dismiss restitution claims where, as here, the parties dispute the subject matter of the contract.

With respect to interest on the Turned-Around NOLS, in the EON the Trust agreed that it was *only* entitled to receive interest on the Distributable NOL Utilization Value, thereby intentionally excluding interest on NOL use that was subsequently turned around and thus not distributable:

> Limited Obligations of [Chase].  The Holder [of the EON] by acceptance of this Note unconditionally acknowledges and agrees that it shall only be entitled to receive payments of Distributable NOL Utilization Value and any interest thereon under this Note in accordance with the provisions of and at the times provided in the Plan.

EON (ex. 2) at ¶ 6.  Under the Trust's reading of the EON (that it did not cover interest on the Turned-Around NOLs), this provision would be rendered meaningless.   The Trust is simply seeking additional consideration under the EON.

The Later Recognized NOLs are likewise covered by the Plan, which defines "NOL Utilization Value" as only those "NOLs in existence and available immediately after the Effective Date."  Plan (exh. 4) at 18.  The Trust argues that restitution is proper because the parties did not anticipate the Later Recognized NOLs, but the standard is not whether parties anticipate a specific event, it is whether the parties have a valid contract covering the subject matter.  The Trust's argument that the phrase "in existence and available immediately after the Effective Date" was intended only to "exclude NOLs that resulted from Reorganized SNTL's post-confirmation operations" is contradicted by both the definition of Turnaround Amount and the drafting history of this provision.

While the Trust asserts that consideration of draft term sheets is improper at this stage, Chase may refer to any documents referred to in the AC, as a matter of law.

Analysis

A restitution action claim is barred if there is a valid contract between the parties governing the same subject matter.  While the Plan did not specifically address the Later Recognized NOLs or interest on the Turned-Around NOLs, these items may nonetheless be within the subject matter of the Plan in a way that precludes a claim for restitution.

As the arguments of both sides make clear, determining whether the Later Recognized NOLs and interest on the Turned-Around NOLs are within the subject

matter of the Plan and EON will turn on questions of contractual interpretation and may

well require evidence of the history and intent of these contracts.  The Plan and the

EON are more equivocal on this issue than Chase argues.  For instance, Paragraph 6

of the EON does not appear to directly address entitlement to interest, but rather is a

more general boilerplate provision limiting Chase's obligations under the EON to those

specifically described.  Furthermore, "interest" and "time-value" are not the same.

Interest is designed to compensate for time value and a given interest rate may closely

(or not so closely) approximate the actual time value, but the concepts remain distinct.

Finally, the real issue with Chase's use of the certain draft term sheets is not whether

Chase can introduce them in this motion to dismiss, but whether they can be considered

apart from the rest of the history and other context of the EON and the Plan.

Thus, this Court will follow case law in this Circuit holding that, where the

restitution recovery sought is not specifically or unequivocally covered by contract, it is

improper to dismiss a restitution claim at the pleading stage.  *Ellis v. J.P. Morgan Chase
& Co.*, 950 F. Supp. 2d 1062, 1091 (N.D. Cal. 2013)("Despite Defendants' arguments

that the mortgage agreements preclude the claim here, the Court finds it is premature

for the Court to take a position on whether this action derives from the subject matter of

the agreements such that a claim for unjust enrichment is unavailable."); *Stitt v.
Citibank, N.A.,* 942 F. Supp. 2d 944, 960 (N.D. Cal. 2013)("it is premature to for the

Court to take a position on whether the action derives solely from the agreements

alleged."); *see also Countrywide,* 601 F. Supp. 2d at 1220-1221 ("Although there are

contracts at issue in this case, none appears to provide for the specific recovery sought

by Plaintiffs' unjust enrichment claim.")  Although the actions in *Ellis* and *Stitt* did contain

RICO fraud allegations, these allegations did not appear to affect at least the *Ellis*'
decision's analysis on this point.

In sum, given the dispute over the subject matter coverage of the Plan and the
EON, dismissal of the restitution claim at the pleading stage is premature.

### Count Six:  Reformation of the Plan

Complaint

The Complaint alleges that the parties contemplated that the Turnaround Amount
was expected to be zero or a nominal amount and if the Plan contains language that
enables Chase to declare a substantial Turnaround Amount that materially reduces the
NOL Utilization Value, then the Plan was based on a mutual mistake (by Chase, the
Creditors' Committee and the Debtors) or unilateral mistake (by the Creditors'
Committee and the Debtors) and should be reformed to express the intention of the
parties.  Likewise, if the Plan is structured to enable Chase to use the Later Recognized
NOLs without compensating the Trust, it fails to express the intent of the parties, is a
mutual or unilateral mistake and should be reformed.  If the mistakes were unilateral on
the part of the Debtors and the Creditors, then Chase knew or suspected their mistake.

Motion

Such a reformation would be a modification of the Plan under §1127, which is the
sole means of modifying a plan of reorganization.  The Plan has been substantially
consummated and thus cannot be modified under §1127.  In its decision not to dismiss
this count in the Complaint, the Court relied on *Motor Vehicle Cas. Co. v. Thorpe
Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 882 (9th Cir. Cal. 2012), to

determine that the Plan had not been substantially consummated.  Chase did not have

the opportunity to brief *Thorpe* because the Trust had not disputed that the Plan had

been substantially consummated and had not relied on *Thorpe*.

Under the Ninth Circuit standards of *Thorpe*, the Plan has been substantially

consummated (and other Ninth Circuit precedent supports this conclusion).  Under

§1101(2)(A), all property to be transferred (to or from the Debtor, which is the focus of

this prong) under the Plan has been transferred:  the stock of SNTL was transferred to

Chase and the EON was transferred to the Trust.  Under §1101(2)(B), there has been

an assumption by the successor to the Debtor (Chase) of the business or management

of all or substantially all of the property to be dealt with under the Plan, which is not

disputed by the Trust.  Under §1101(2)(C), distributions to creditors under the Plan have

also commenced by way of the distribution of Litigation Trust Certificates to SNTL

creditors and the payment of administrative claims.  Therefore, the Plan may not be

reformed.

Finally, the Plan provides that it may not be amended without the consent of

Chase.  Plan §12.8.


<u>Opposition</u>

Chase is asking for reconsideration of the Court's December ruling on this count

in the original Complaint under Fed. R. Civ. P. 54(b), but motions for reconsideration

under Rule 54(b) should not be granted absent unusual circumstances, such as newly

discovered evidence, clear error or manifest injustice, or intervening change in law.  The

current circumstances do not justify reconsideration.  Chase is essentially urging the

Court to ignore *Thorpe* in favor of earlier decisions that are either unpublished or from lower courts.

Reply

Ninth Circuit case law holds that, under Rule 54, the Court has the power to reconsider and modify its interlocutory orders at any time prior to entry of final judgment.

The Trust does not dispute that reformation of the Plan is a modification that can only be pursuant to §1127(b) and that under §1127(b) the plan cannot be modified if it has been substantially consummated.  The Trust does not dispute that two of the three requirements for substantial consummation have been met.

The Trust is disputing only whether "substantially all of the property proposed by the Plan to be transferred' has been transferred."  §1101(2)(A).  This requirement addresses transfers of "property of the debtor" and *Thorpe*, which is relied upon by the Trust, is distinguishable on this basis.  While both this case and *Thorpe* focus on transfers made to a trust for the benefit of creditors, in *Thorpe*, unlike this case, the transfers were from the debtors.  Because the *Thorpe* transfers were settlement payments owed to the debtors by insurance companies, the *Thorpe* plan specifically contemplated that the debtors would transfer assets to the trust subsequent to the effective date (whenever received by the debtors).  In this Plan, it was contemplated that all estate property to be transferred would be transferred as of the Effective Date.

Contrary to the Trust's assertions, the NOLs cannot be property of the estate proposed to be transferred that have not yet been transferred, because there is no longer a bankruptcy estate and the NOLs were transferred to Chase at confirmation.

The EON payments are payments on a debt instrument, not "transfers of estate property" under §1101(2)(A).   The Ninth Circuit B.A.P. has adopted the reasoning of *In re Hayball Trucking, Inc.,* 67 Bankr. 681 (Bankr. E.D. Mich. 1986), and its progeny in *Antiquities of Nevada v. Bala Cynwyd Corp. (In re Antiquities of Nevada, Inc.),* 173 B.R. 926 (B.A.P. 9th Cir. 1994), which held that transfers under §1101(2)(A), such as this issuance of the EON, must be distinguished from distributions from creditors under §1101(2)(C). Indeed, the Ninth Circuit modified its T*horpe* opinion to delete a reference to the small amount so far distributed to creditors.

Finally, under §12.8 of the Plan, the Trust cannot modify the Plan without the consent of Chase.  This requirement is not inconsistent with §1127(b) restricting modification to plans not substantially consummated.  Disregarding Chase's rights in this regard violates the contract interpretation canon that terms should not be rendered superfluous.  Any duty of good faith and fair dealing cannot alter the express terms of the contract and so cannot limit Chase's right to withhold consent to modification.

Analysis

As *Thorpe* was not raised in the Opposition to the original motion to dismiss and Chase had no reason to brief it, the Court will hear this issue.

The Bankruptcy Code defines substantial consummation as: (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; **and** (C) commencement of distribution under the plan. 11 U.S.C. §1101(2)(emphasis added).

At issue in this motion is identification of "property proposed to be transferred." Chase argues that this prong addresses transfers *to or from the debtor* at or near confirmation.  For Chase the relevant transfers were (i) the stock of the Debtor to Chase and (ii) the EON and other rights transferred to the Trust, in each case at or about confirmation.   For the Trust, the relevant transfers are payment of moneys by Chase to the Trust arising from NOL Utilization, as provided for in the Plan and the EON,  None of these payments to the Trust have yet been made, so if these payments are "transfers" under §1101(2)(A), substantially all transfers have not been made and the Plan has not been substantially consummated.

 One clarification will make this analysis simpler:  transfers under §1101(2)(A) clearly do not mean payments to creditors by the Trust – these  are the "distributions" contemplated by the third prong of the substantial contribution test in §1101(2)(C).  *See, e.g., Antiquities of Nevada,* 173 B.R. 926.  (The language from *Annotico v. Marina City Club, L.P. (In re Marina City Club, L.P.*), 1998 U.S. App. LEXIS 13407 (9th Cir. June 18, 1998), that Chase quotes in its briefs is interpreting §1101(2)(C), which is not at issue.) This distinction between the transfers of subsection (A) and the distributions of subsection (C) is the main holding of the *Hayball Trucking* line of cases, which the B.A.P. adopted in *Antiquities of Nevada*.  It also appears to be the reason why the Ninth Circuit removed the reference to distributions to creditors from its *Thorpe* opinion interpreting §1101(2)(A).

Chase interprets §1101(2)(A) as being restricted to transfers of "property of the estate" or "to or from the debtor" but the statute contains no such restriction.  Chase relies on language from *Hayball Trucking* that defines transfers under §1101(2)(A) as: "transfers of property to or from the debtor at or near the time the plan is confirmed

undertaken to share the new financial structure of the debtor." 67 B.R. at 684. The

B.A.P. had quoted this language in *Antiquities* (173 B.R. at 930), but that phrase is not

directly relevant to the main holding in *Antiquities,* which (as noted above) distinguishes

between "transfers" under §1101(2)(A) and "distributions" under §1101(2)(C). Most

importantly, the Ninth Circuit in *Thorpe* analyzed transfers under §1101(2)(A) without

reference to *Hayball Trucking*, (the now twenty-year-old) *Antiquities of Nevada,* or the

restrictions relied upon by Chase.

For the Ninth Circuit in *Thorpe*, the dispositive fact under §1101(2)(A) was that

only $135 million of $600 million of settlement proceeds had been transferred to the

post-confirmation trust. This $600 million was to be paid by thirteen insurers pursuant

to settlements the debtors had reached with these insurers. Under the Plan, the

debtors had contributed the proceeds of these settlement agreements to the trust at

confirmation. In other words, the debtors' confirmation transfer of their rights to

proceeds under these settlement agreements was not the ultimate transfer under

1101(2)(A). For the Ninth Circuit, the payment on these settlement agreements was the

property that had to be substantially all transferred under §1101(2)(A) for substantial

consummation. The *Thorpe* debtors' contribution of their rights to proceeds under the

settlements to the post-confirmation trust under the plan is analogous to the issuance of

the EON to the Trust. Under the *Thorpe* analysis, only upon payment under these

contracts will transfers occur.

Chase struggles to distinguish *Thorpe* by arguing that the insurance settlement

payments made after the effective date would actually be transferred by the *Thorpe*

debtors to the trust. Thus, all these post-effective date payments in *Thorpe* would be

made by the debtors (which is not the case here). This analysis seems strained. It

relies on reading into §1101(2)(A) a requirement that the transfers be "to or from the debtor," which (as noted above) is not supported by the statutory language or current case law.  Further, Chase selectively quotes from provisions of the *Thorpe* plan and trust agreement to suggest that post-effective settlement payments would be made through the debtors to the post-confirmation trust, but other sections of the plan and trust agreement suggest that these payments would *not* be made through the debtors. *See, e.g.,* Thorpe Plan (exh. I to Schmidt Dec.) at 40:5-6 ("the Debtors automatically and irrevocably transfer to the Trust all of their Asbestos Insurance Rights").

Payments of NOL Utilization Value to the Trust are simply too similar to the payments of insurance settlement proceeds to the post-confirmation trust in *Thorpe* for this Court to conclude that the substantially all transfers of property have been made under §1101(2)(A).

I am a bit puzzled by Chase's argument that since the Plan provides that it cannot be amended without Chase's consent, it may not be reformed without Chase's consent.  Put another way, Chase appears to be arguing that if reformation is a modification for §1127 purposes, it is also a modification for state contract law purposes.  This is incorrect.  A modification is an agreement by the parties to change the terms of the contract (Cal. Civ. Code  §1698), while reformation is an equitable remedy to fraud or certain mistakes (Cal Civ. Code §3399).  "A declaration of the rights and obligations under a contract which results in a reformation is but a determination of the intention of the parties and of the legal effect of the contract, not a modification of its terms." *Putnam v. Putnam*, 51 Cal. App. 2d 696, 699 (Cal. App. 1st Dist. 1942); *see also Nongard v. Scott*, 176 Cal. App. 2d 650, 656 (Cal. App. 2d Dist. 1959); Steeve v. Yaeger, 145 Cal. App. 2d 455 (Cal. App. 4th Dist. 1956).

### Conclusion

The motion is granted with respect to Count One, which is dismissed with prejudice and without leave to amend, and with respect to the following allegations supporting Count One, which are struck as follows:

      a.  the reference to Count One in paragraph (b) of the prayer for relief, which should be omitted,

      b.  the use of "fiduciary" in the first sentence of the AC, which can be remedied by striking "fiduciary and contractual" leaving an unmodified "obligations",

      c.  the reference to "joint venture" in ¶19 of the AC, which can be replaced with a more general word or phrase, and

      d.  the reference to "co-venturer" in ¶20 of the AC, which can be replaced with a more general word or omitted from the paragraph.

The motion is otherwise denied.

The Trust is to file an amended complaint, amending the AC only as outlined above, by April 30, 2014.

Chase is to file an answer no later than May 15, 2014.

###

Date: May 8, 2014

_____

Geraldine Mund
United States Bankruptcy Judge