FILED & ENTERED

SEP 11 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Fisher      DEPUTY CLERK

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

In re:

Superior National Insurance Gr

Debtor(s).

The Litigation Trust for the Trust
Beneficiaries of SNTL Corporation and
Certain Affiliates

Plaintiff(s),

v.

JP MORGAN CHASE,  JP MORGAN
CHASE BANK N.A.,

Defendant(s).

CHAPTER 11

Case No.:  1:00-bk-14099-GM
Adv No:   1:13-ap-01099-GM

**MEMORANDUM OF OPINION DENYING
DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS (Docket
#160)**

Date:    August 8, 2014
Time:    10:00 a.m.
Courtroom:   303

Defendants JP Morgan Chase Bank, N.A. and JP Morgan Chase & Co.

("Chase") move to compel the production of documents withheld by the Plaintiff, the

-1-

Litigation Trust for the Trust Beneficiaries of SNTL Corporation and Certain Affiliates (the Trust").

**Factual Background**

SNTL Holdings Corp. ("SNTL") and its non-insurance subsidiaries (collectively with SNTL, the "Debtors") filed for chapter 11 relief on April 26, 2000 (#00-bk-14099-GM).  Also in 2000, SNTL's five insurance subsidiaries were seized and placed into conservatorships by state agencies in California and New York.

The Debtors' primary assets were over $1 billion of net operating loss carryforwards ("NOLs").  Chase held about $19 million of the Debtors' senior debt.  On June 21, 2002, the Debtors' Second Amended Chapter 11 Joint Plan of Reorganization as amended (the "Plan") was confirmed (BC Dkt. 709-1).  The Plan was structured to realize value from the NOLs, and thus was shaped by the requirements of tax law.  In essence, Chase acquired all equity in SNTL so that Chase could use the NOLs to offset its tax liability and then pay most of the value of those tax savings to the Trust, which was created for the benefit of the Debtors' stakeholders pursuant to the Plan and a Litigation Trust Agreement.

On May 12, 2013, the Trust filed a complaint (the "Complaint"), which commenced this adversary proceeding (13-ap-1099), alleging that Chase has had the benefit of over $2.2 billion in NOL's from the Debtors, which has resulted in tax savings to Chase of over $775 million, yet Chase has not paid anything to the Trust.   Chase brought motions to dismiss both the Complaint and a First Amended Complaint later filed by the Trust.  As a result of the Court's rulings on these motions to dismiss, the Trust filed a Second Amended Complaint (the "SAC") on April 30, 2014 (AP Dkt. 106),

which is the operative complaint in this adversary proceeding.  The SAC seeks recovery

on Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing,

Anticipatory Breach of Contract, Restitution and Reformation of the Plan.   Chase filed

an answer to the SAC on May 15, 2014 (AP Dkt. 117).

In the meantime, the Trust and Chase have been conducting discovery, have

stipulated to various scheduling orders and have brought certain discovery disputes to

this Court for resolution.  Most recently, on July 16, 2014, the Court entered a

scheduling order (pursuant to the parties' stipulation), which, among other things, set

October 10, 2014 as the deadline to complete depositions of fact witnesses and

respond to written discovery and April 20, 2015 as the "Trial-Ready Date" (AP Dkt. 157).

In response to Chase's document production requests to the Trust, the Trust has

withheld or redacted all documents listed on the Privilege Log and Redaction Log

(which are Exhibits 1 and 2 to the Declaration of Glenn Kurtz filed in support of this

motion), asserting that these documents are protected from discovery by attorney-client

privilege, the work product doctrine and/or the common interest doctrine. Chase

maintains that many of these documents are not subject to privilege and should be

produced and/or unredacted.  As Chase and the Trust were unable to resolve the issue,

they entered into a stipulation pursuant to Local Bankruptcy Rule 7026-1 (the

"Stipulation") and Chase filed this motion to compel.

This matter was heard on August 8, 2014 at 10:00 a.m.  Prior to the hearing, the

Court had posted a lengthy tentative ruling analyzing the legal issues raised in this

motion and directing the parties to confer prior to the hearing to attempt to resolve these

issues in light of the legal conclusions reached by the Court.  The parties were unable to

consensually resolve the issues.  After hearing argument of counsel at the hearing, the

Court directed each party to file its own proposal to resolve these issues, which the

Court would use to prepare its ruling in this matter.  The hearing was continued to

September 16, 2014 at 10:00 a.m. as a holding date.

On August 15, 2014, the Trust filed its proposal which mirrored the language that

the Trust had suggested to the Court at the August 8 hearing:

> 1.  Neither party will be permitted to prove its claims or defenses by relying on evidence of the party's individualized intent or unilateral mistake (or lack thereof);
> 2.  To the extent either party intends to prove mutual intent and/or mutual mistake (or lack thereof), the party will do exclusively on the basis of non-privileged evidence (e.g., information exchanged between the parties, or information submitted or represented to the Court);
> 3.  Neither party will present attorney testimony regarding communications with its clients to which the other party was not included;
> 4.  Neither party will present attorney testimony regarding the attorney's individual analysis or mental impressions of the Plan or other documents approved by the Court in connection with the Plan;
> 5.  The parties may present attorney testimony regarding non-privileged communications or representations between the parties or to the Court.

Trust's Proposal (AP Dkt. 190).

On August 22, 2014, Chase filed its proposal:

> (i)    the Trust agrees to withdraw its reformation and restitution claims because such claims are based on the parties' intent, understanding or contemplation of (1) the NOL Utilization Value, (2) the Turnaround Amount, (3) the Later Recognized NOLs, (4) the time value of money (or interest) related to the Turnaround Amount, and (5) Chase's purported obligation to engage in the Trust's alleged tax planning;
> (ii)    the Trust agrees to narrow its breach of contract, breach of the implied covenant of good faith and fair dealing and anticipatory breach of contract claims to exclude any evidence concerning the parties' intent, understanding, or contemplation of (1) the NOL Utilization Value, (2) the Turnaround Amount, (3) the Later Recognized NOLs, (4) the time value of money (or interest) related to the Turnaround Amount,  and (5) Chase's purported obligation to engage in the  Trust's alleged tax planning;
> (iii)    the Trust agrees to not present attorney testimony to support its claims.

Defendants JP Morgan Chase Bank N.A. and JP Morgan Chase & Co.'s Proposal (AP

Dkt. 191).

**<u>Applicable Law</u>**

Although California and federal law governing privilege are substantially similar, certain differences in precedent may affect the determination of these issues.  Thus, the appropriate choice of law should be considered.  Attorney-client privilege and work product doctrine should each be analyzed separately, as the standards governing the two privileges differ in some respects.

**Attorney-Client Privilege**

Federal Rule of Evidence 501 states that "state law governs privilege regarding a claim or defense for which state law supplies the rules of decision."  *See also Star Editorial v. United States Dist. Court*, 7 F.3d 856, 859 (9th Cir. 1993); *Dynamic Fin. Corp. v. Kipperman (In re N. Plaza, LLC),* 395 B.R. 113, 121 (S.D. Cal. 2008).  The claims in the SAC are all state law causes of action and both the Plan (§12.14) and the EON (§10) provide that they are governed by California law, so the California law of privilege (Cal. Code. Evid. §950 *et seq.*) is applicable to the resolution of attorney-client privilege issues.   (If any of the claims were governed by federal law, then federal law of privileges would govern the entire proceeding.  *Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 103 (3d Cir. 1982); *Dynamic Fin. Corp.,* 395 B.R. at 121.

Cal. Code Evid. §954 provides that "the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ."

> [T]he fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters.

1    *Mitchell v. Superior Court*, 37 Cal. 3d 591, 599 (Cal. 1984)(citations omitted).

2

3                                    **Work Product Doctrine**

4
        "Unlike the attorney client privilege, the work product privilege is governed, even
5
in diversity cases, by a uniform federal standard embodied in Federal Rule of Civil
6
Procedure 26(b)(3)".  *United Coal Cos. v. Powell Constr. Co.,* 839 F.2d 958, 966 (3d
7
Cir. 1988); *Kandel v. Brother Int'l Corp.,* 683 F. Supp. 2d 1076 (C.D. Cal. 2009).
8
         Rule 26(b)(3) (applicable through Fed. R. Bankr. P. 7026) provides a qualified
9
immunity for tangible work product:
10
             Ordinarily, a party may not discover documents and tangible things that
11       are prepared in anticipation of litigation or for trial by or for another party or its
         representative (including the other party's attorney, consultant, surety,
12       indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may
         be discovered if:
13             (i)  they are otherwise discoverable under Rule 26(b)(1); and
               (ii)  the party shows that it has substantial need for the materials to
14       prepare its case and cannot, without undue hardship, obtain their substantial
         equivalent by other means.
15
Fed. R. Civ. P. 26(b)(3).
16
        Bankruptcy is considered "litigation" for Rule 26(b) purposes.  *Osherow v. Vann*
17
*(In re Hardwood P-G, Inc.),* 403 B.R. 445 (Bankr. W.D. Tex. 2009); *Tri-State Outdoor*
18
*Media Group, Inc. v. Official Comm. of Unsecured Creditors (In re Tri-State Outdoor*
19
*Media Group, Inc.),* 283 B.R. 358 (Bankr. M.D. Ga. 2002).
20
        Further, the work product doctrine protects materials prepared for any litigation or
21
trial so long as they were prepared by or for a party to the subsequent litigation. *Federal*
22
*Trade Comm'n v. Grolier, Inc.,* 462 U.S. 19, 25-26 (1983); *see also U-Haul Co. of Nev.*
23
*v. Gregory J. Kamer, Ltd.,* 2013 U.S. Dist. LEXIS 43340, 14 (D. Nev. Mar. 26, 2013).
24

25

26

27

28

## Common Interest Doctrine

State law governs the common interest doctrine (which is a "non-waiver doctrine") in actions asserting only state law claims - to the extent the doctrine is protecting attorney-client communication from waiver. *In re Sandwich Islands Distilling Corp.,* 2009 Bankr. LEXIS 3009 (Bankr. D. Haw. Sept. 21, 2009).

It is not clear whether state or federal law governs common interest doctrine in the same state law action if the underlying privilege is work product (which itself is governed by federal law). Some cases have stated that state law applies. *Munich Reinsurance Am., Inc. v. Am. Nat'l Ins. Co.,* 2011 U.S. Dist. LEXIS 41826 (D.N.J. Apr. 18, 2011)(attorney-client and attorney work product); *McLane Foodservice, Inc. v. Ready Pac Produce, Inc.,* 2012 U.S. Dist. LEXIS 76343, 9-10 (D.N.J. June 1, 2012)(work product). Other cases have applied federal law to the question of whether the common interest doctrine protected a work product privilege. *Reginald Martin Agency, Inc. v. Conseco Med. Ins. Co.,* 460 F. Supp. 2d 915, 917 (S.D. Ind. 2006); *Lennar Mare Island, LLC v. Steadfast Ins. Co.,* 2014 U.S. Dist. LEXIS 48509, at *17 (E.D. Cal. Apr. 7, 2014).

Under state or federal law, the doctrine operates to preserve privilege from express waiver by disclosure to a third party:

> The common-interest doctrine allows disclosure between parties, without waiver of privileges, of communications protected by the attorney-client privilege or the attorney work-product doctrine where the disclosure is necessary to accomplish the purpose for which the legal advice was sought. The doctrine is not an independent privilege but a doctrine specifying circumstances under which disclosure to a third party does not waive privileges. It does not mean there is "an expanded attorney-client relationship encompassing all parties and counsel who share a common interest."

*Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889 (Cal. App. 5th Dist. 2013)(citations omitted).

1

2

3                                **Burden of Proof**

4       The party claiming the [attorney-client] privilege has the burden of establishing
        the preliminary facts necessary to support its exercise, i.e., a communication
5       made in the course of an attorney-client relationship. Once that party establishes
        facts necessary to support a prima facie claim of privilege, the communication is
6       presumed to have been made in confidence and the opponent of the claim of
        privilege has the burden of proof to establish the communication was not
7       confidential or that the privilege does not for other reasons apply.

8   *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (Cal. 2009).

9
    Essentially the same allocation applies to attorney work product privilege under Federal
10
    law. *See, e.g., Sanchez v. Matta*, 229 F.R.D. 649, 656 (D.N.M. 2004); *Perkins v. Gregg*
11
    *County,* 891 F. Supp. 361, 362 (E.D. Tex. 1995).
12

13

14                    **Issue 1: Transmission of Documents**

15      Chase argues that the attorney-client communications that relay information

16  imparted by third parties are not covered by the attorney-client privilege.

17      "[T]he mere fact that an attorney was involved in a communication does not
18      automatically render the communication subject to the attorney-client privilege,"
        *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995); rather, the
19      "communication between a lawyer and client must relate to legal advice or
        strategy sought by the client," *United States v. Johnston*, 146 F.3d 785, 794 (10th
20      Cir. 1998).

21
    *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010).  The Tenth Circuit
22
    went on to conclude that "conduit" information (where the attorney is merely relaying
23
    information from a third party to the client) is either an exception to attorney-client
24
    privilege, or simply means that the communication falls outside the scope of the
25
    privilege.  *Id.*
26
        However, I have not found any decisions under California law applying this rule
27
28  and in fact the California Supreme Court recently held that attorney-client privilege does

                                    -8-

protect communications that merely transmit documents:

> The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material. As we explained in *Mitchell v. Superior Court*, *supra*, 37 Cal.3d at page 600: "[T]he privilege covers the transmission of documents which are available to the public, and not merely information in the sole possession of the attorney or client. In this regard, it is the actual fact of the transmission which merits protection, since discovery of the transmission of specific public documents might very well reveal the transmitter's intended strategy."

*Costco*, 47 Cal. 4th at 733 (Cal. 2009)(*quoting Mitchell v. Superior Court*, 37 Cal. 3d 591, 600 (Cal. 1984).

Thus, the "mere transmission" of documents by the attorney to a client would be covered by California's attorney-client privilege to the extent that the fact of transmission itself merits protection as attorney-client communication.

## Issue 2: "At Issue" Waiver

Chase argues that the Trust has waived privilege by (i) making claims for breach of contract, restitution, and reformation that place the intent of the parties in entering into the Plan and the EON at issue and (ii) intending to introduce extrinsic evidence from its attorneys to bolster its claims.  Specifically, the Trust's contract claims allege that Chase's calculation of the Turnaround Amount is contrary to the parties' intent and its restitution claim asserts that the parties did not intend for the Plan to cover the Later Recognized NOLs or the time value of the money resulting from Chase's use of the NOLs that are subject to Turnaround. The reformation claim is based on an assertion that the Plan as drafted fails to express the parties' intention.  Finally, the Trust plans to use parole evidence from its attorneys to prove the parties' intent in entering into the Plan and the EON.

**"At Issue" Waiver of Attorney-Client Privilege**

As a matter of fairness, California law would allow waiver of attorney-client

privilege if the Trust's claims raise an issue touching directly on the content of the

attorney-client communication (or, put conversely, where the attorney-client

communication is at the heart of the issue).

> The privilege is waived, however, only when the client tenders an issue touching
> directly upon the substance or content of an attorney-client communication - not
> when the testimony sought would be only "one of several forms of indirect
> evidence" about an issue. *Rockwell International Corp. v. Superior Court*, 26
> Cal.App.4th 1255, 1268, (1994), *quoting Mitchell v. Superior Court*, 37 Cal. 3d
> 591, 691 P.2d 642, 650, 208 Cal. Rptr. 886 (Cal. 1984).

*Hamilton v. Lumsden (In re Geothermal Resources Int'l)*, 93 F.3d 648, 652-653 (9th Cir.

1996)(applying California law); *see also Steiny & Co. v. California Electric Supply Co*.,

79 Cal. App. 4th 285, 292 (Cal. Ct. App. 2d Dist. 2000) ("Where privileged information

goes to the heart of the claim, fundamental fairness requires that it be disclosed for the

litigation to proceed.")  None of the cases applying this general California standard

involve the specific issues of contract interpretation, mistake and the parties' intent.

Clearly, the documents must be more than relevant to the litigation, because

privilege is an exception to the rule requiring discovery of relevant material.  "Although

exercise of the privilege may occasionally result in the suppression of relevant

evidence, the Legislature of this state has determined that these concerns are

outweighed by the importance of preserving confidentiality in the attorney-client

relationship." *Mitchell v. Superior Court*, 37 Cal. 3d 591, 599 (Cal. 1984).

Chase argues that "at issue" waiver case law deals with two distinct types of waiver:

*(1)* waiver by placing the attorney-client communication itself (the legal advice or the
attorney's mental state) at issue; and

*(2)* waiver by making a claim that requires examination of the attorney-client communication for truthful resolution.

According to Chase, it is asserting the latter type of waiver, while the Trust is relying on irrelevant precedent governing the former type of waiver.

However, California case law granting "at issue" waiver may be limited to the former.  An oft-cited case, *Merritt v. Superior Court*, 9 Cal. App. 3d 721 (Cal. Ct. App. 2d Dist. 1970) allowed waiver of attorney-client privilege in a lawsuit against an insurance company for bad faith refusal to settle within policy limits, alleging that counsel for the insurer had so confused plaintiff's counsel as to disable plaintiff from settling the case within policy limits. The *Merritt* court upheld the disclosure on the ground that plaintiff had placed in issue the decisions, conclusions and mental state of his then-attorney by alleging that this attorney's confusion led to the failure to settle.  Subsequent California Supreme Court cases have explained *Merritt* as:

> "limited in its application to the one situation in which a client has placed in issue the *decisions, conclusions, and mental state of the attorney who will be called as a witness to prove such matters.*"

*S. Cal. Gas Co. v. Public Utils. Com*, 50 Cal. 3d 31, 42-43 (Cal. 1990)(emphasis in the original); *Mitchell*, 37 Cal. 3d at 605.  The  Court went on:

> SoCalGas has done nothing in the present proceedings to place in issue its privileged communications. Nowhere in its CAM application or in the proceedings before the commission does SoCalGas state that it intends to rely on its attorneys' advice or state of mind to demonstrate that it acted reasonably when it bought out the Getty contract. It has expressly stated otherwise. Because its attorneys' advice or state of mind is not in issue, it has not impliedly waived its attorney-client privilege.

I have not found any cases applying the general California standard for "at issue" waiver to Chase's type of waiver (which is applicable in this case):  where the plaintiff has made a claim that requires examination of attorney-client communications for truthful resolution.  Thus, this Court is without California case law guidance as to (i)

whether California "at issue" waiver indeed extends beyond situations where the

attorneys' advice or mental state is at issue (which is at least suggested by the open

wording of the general standard) and (ii) if so, how to apply California's general

standard to these particular facts.

Federal law, which has similar general standards for "at issue" waiver of

attorney-client privilege, can provide guidance on this issue of first impression.

Federal law generally provides a three-part test for 'at issue' waiver:

> [I]mplied waiver of attorney-client privilege . . . occurs when "(1) the party asserts
> the privilege as a result of some affirmative act, such as filing suit; (2) through
> this affirmative act, the asserting party puts the privileged information at issue;
> and (3) allowing the privilege would deny the opposing party access to
> information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*,
> 43 F.3d 1322, 1326 (9th Cir. 1995) (relying on *Hearn v. Rhay*, 68 F.R.D. 574, 581
> (E.D. Wash. 1975)); see also *United States v. Amlani*, 169 F.3d 1189, 1195 (9th
> Cir. 1999) (relying on *Lane* and *Hearn*). In applying this test, the "overarching
> consideration is whether allowing the privilege to protect against disclosure of the
> information would be 'manifestly unfair' to the opposing party." *Lane*, 43 F.3d at
> 1326.

*Spin Master, Ltd. v. Zobmondo Entm't, LLC*, 2012 U.S. Dist. LEXIS 188149, 7 (C.D. Cal.

Mar. 9, 2012); s*ee also Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003)(waiver

"to the extent necessary to give [the] opponent a fair opportunity to defend against [the

issue], but no more broadly than needed to ensure fairness).

Chase cites several cases directly on point:  claims requiring the interpretation of

contracts or asserting mistake were held to waive privilege where the attorney-client

communications were essential to the central issue of intent.   *Monsanto Co. v. E.I.*

*Dupont De Nemours & Co.,* 2011 U.S. Dist. LEXIS 52859, at *8-9 (E.D. Mo. May 17,

2011) (a claim for reformation of contract due to mistake placed the plaintiff's subjective

understanding of the contract at issue and Delaware law therefore required a waiver of

attorney-client privilege as to legal advice on that issue); *Galt Capital, LLP v. Seykota*,

2004 U.S. Dist. LEXIS 2183, at *5 (D.V.I. Feb. 9, 2004)(mutual and unilateral mistake

counterclaims necessarily placed attorney-client communications at issue because

attorney was acting as client's representative in negotiating and concluding the

agreement, waiver of attorney-client privilege)(applies Third Circuit precedent); *Synalloy*

*Corp. v. Gray*, 142 F.R.D. 266, 270 (D. Del. 1992)(attorney negotiated agreements,

when client asserted fraudulent misrepresentation and rescission of the agreement, it

waived its right to prevent disclosure of communications which might show the parties

intent in entering the agreements)(applying federal privilege law); *Pitney-Bowes, Inc. v.*

*Mestre*, 86 F.R.D. 444, 447 (S.D. Fla. 1980)(client "has placed in issue the very soul of

this litigation the intent of the parties with regard to construction of certain terms of the

Agreements"; privilege waived); *State-Wide Capital Corp. v. Superior Bank FSB*, 2000

U.S. Dist. LEXIS 18552, at *5 (S.D.N.Y. Jan. 11, 2000) ("[b]ecause intent is at issue,

and because [the attorney] was the draftsperson of the contracts -- based on input from

both her client and plaintiffs -- the attorney-client privilege is waived . . . only to the

extent necessary to examine the validity of the parties' assertions of intent in the

underlying contract formulations")(appears to be applying New York law).

      The Trust argues that these cases are distinguishable (Stipulation at 31-32) and

it is partially correct.  In *Monsanto*, the reformation claim arose from a mistaken belief

that was based on the advice of counsel and the waiver was limited to legal advice on

that issue.   2011 U.S. Dist. LEXIS 52859 at *12.  (*Monsanto* did not, however, hold that

the information must be unavailable from any other source, as the Trust contends.)

*Pitney-Bowes*, is on point with a claim based on the parties' intent, but the Trust

correctly notes that the court in that case concluded that the attorney-client

communications were the **only** "apparent source of direct proof." 86 F.R.D. at 447.

On the other hand, *Galt Capital* appears to be on point:

> Seykota [who was asserting mutual and unilateral mistake counterclaims] cannot use his attorney to negotiate a separation agreement on his behalf and willingly sign that agreement, later claim he did not understand its terms, then interpose the attorney-client privilege to shield from discovery his discussions with and instructions to [his attorney].

2004 US Dist. LEXIS 2183 at *5.  As does *Synalloy*:

> [B]y claiming "rescission" of the Agreement due to "no meeting of the minds," Chariot Group waived its right to prevent disclosure of communications which might show the parties [sic] intent in entering the Agreements. *See Pitney-Bowes*, 86 F.R.D. 444 (concluding attorney-client privilege waived where the intent as to the terms of a contract are put at issue); *see generally Testimonial Privileges* § 1.50 at 72 n.440 (Supp. 1991).
>       One result of asserting the privilege has been to deprive Synalloy of the information necessary to 'defend' against the counterclaim. In this case, it was the attorneys who negotiated the Agreement.  Because Chariot Group raised the issues of its lack of understanding of the Agreement and fraudulent misrepresentation, in circumstances in which perhaps the only people who would have explained the agreement to it were its attorneys, the Chariot Group's assertion in the counterclaim was an implicit waiver of the privilege.

142 F.R.D. at 270.  As does *State-Wide Capital*:

> Here, the parties' intent is plainly at issue, as the Court has found that an ambiguity exists. As a consequence, the parties' intent is relevant. Further, both parties have affirmatively placed intent at issue in this matter. In opposing plaintiff's summary judgment motion, defendant made assertions regarding the parties' alleged intent and purpose for including certain contractual provisions, and in part relied upon an affidavit of Mr. Stephenson asserting his intent in the underlying transaction.
>       Because intent is at issue, and because Ms. Mandel was the draftsperson of the contracts -- based on input from both her client and plaintiffs -- the attorney-client privilege is waived. However, it is waived only to the extent necessary to examine the validity of the parties' assertions of intent in the underlying contract formulations, and to examine Ms. Mandel's role as draftsperson of the contracts at issue.

2000 U.S. Dist. LEXIS 18552, at *4-5.

More narrowly, Chase cites the Trust's intent to introduce extrinsic (or parole) evidence to interpret the Plan and EON as a waiver of privilege, under *Stovall v. United States*, 85 Fed. Cl. 810, 816 (Fed. Cl. 2009)(attorney-client privilege case).  *Stovall*

supports this rule, although on a more limited basis than Chase asserts.  The *Stovall*

court (in a motion for reconsideration) subsequently restated the grounds for waiver

more narrowly: "to rely potentially upon parole evidence *from its attorneys* to influence

the interpretation of the contract" (emphasis added).  On reconsideration, the court also

allowed the party to avoid waiver by:

> Fil[ing] a statement -- which the court will view as binding for this case --
> indicating that it:
>> i. will not call any OGC attorneys to testify with respect to any issues in
>> this case;
>> ii. will not rely upon any otherwise privileged communications to support its
>> defenses or claims; and
>> iii. will not rely upon any other evidence (documentary or testimonial) to
>> the extent the substance thereof is based upon or impacted by, any advice
>> provided by OGC attorneys regarding the meaning of the Resolution
>> Agreement . . . .

*Stovall v. United States*, 86 Fed. Cl. 770, 773 (Fed. Cl. 2009).  Under *Stovall,* to the

extent the Trust presents attorney testimony, privileged material or other evidence

relying on such testimony or privileged material as parole evidence to interpret the Plan

or EON, it would be electing to waive privilege.

These cases were determined under Delaware, New York or Federal privilege

law, not California privilege law, and none of them are in the Ninth Circuit.  They do

however have persuasive value in answering the question before this Court:

> Are the attorney-client communications regarding intent of the parties and their
> mistaken understanding both (i) at the heart of the reformation and restitution
> claims and (ii) so vital to Chase's defense that fundamental fairness requires
> their disclosure?

A quick review of the SAC indicates that the Trust's reformation and restitution

claims do put the intent of the parties and their understanding of the Plan and EON

squarely at issue.  The case law cited by Chase supports this conclusion.  Assuming (as

appears to be the case) that the attorneys were heavily involved in the negotiation of the

Plan and the EON, their communication with clients would contain a great deal of relevant evidence on these issues. Direct relevance alone is not enough, of course. Rather, the communications must be so vital to Chase's defense that equity requires their disclosure, as opposed to being merely "one of several forms of indirect evidence" about the issue.

This turns on whether the intent and mistakes at issue are mutual or unilateral. Shared intent and mutual mistake by Chase, on the one hand, and the other parties to the Plan and EON, on the other hand, is more likely to be adequately established through the communications between the opposing parties to the negotiations, without need for waiver of privilege. An issue of intent or mistake on only one side of a contract, however, makes the communications between that party and their attorney more vital evidence. The restitution claim in the SAC repeatedly alleges "had the parties, including the Debtors, been aware [or contemplated] [a large Turnaround Amount], they would have required Chase. . . ." The Reformation claim asserts unilateral, as well as mutual, mistake. Thus, the individual intent of the Debtors and the creditors' committee is at issue and the attorney-client communications probably are vital evidence that cannot be replaced by the parties' negotiating history.

Courts have given Plaintiffs the option of narrowing their claims to avoid waiver, and so the Court offered both parties the opportunity to draft a proposal for the Trust to narrow its claims to avoid waiver. The Trust proposal outlined above does narrow its claims consistent with the Court's conclusions: it provides that neither party will rely on unilateral intent or mistake and that only non-privileged evidence (either exchanged between parties or with the Court) will be used to prove mutual intent or mistake. (The proposal presumably applies to both sides because if Chase asserts defenses based on

its own intent or mistake (or lack thereof), or presents privileged evidence or testimony

based on privileged evidence, it would be correspondingly waiving privilege.)

Chase's proposed restrictions go well beyond the issues raised by the Court in

the tentative ruling.  Chase proposes eliminating the  restitution and reformation claims,

as well as any issue of intent in the remaining claims.  Given that the Trust's more

narrow restrictions work, the Court sees no reason to adopt Chase's broader restrictions

that would essentially vitiate this action.

Chase argued at the hearing that it needs this privileged material to establish the

parties' negotiating history:  that the Debtor had asked Chase for provisions similar to

what the Trust is seeking to impose though its claims in this proceeding and Chase

rejected those requests.  Non-privileged communications between the two sides would

certainly be the best evidence of this back and forth negotiating history, but Chase

insists that it lacks evidence of this history and the Debtor's internal communications

with its attorneys are the best evidence available of Chase and the Debtors' negotiating

history.

It strains credulity to believe that there is neither direct evidence of the parties'

negotiations nor a substantial archive of correspondence between Chase and its own

attorneys over this transaction.  Relevant California case law allows waiver when the

privileged material is at the heart of a claim, but not if it is one of several forms of

indirect evidence.  By narrowing its claims to issues of mutual mistake and intent, the

Trust has removed the Debtor's internal communications with attorneys from the heart

of these claims.  Instead, these communications are being sought because Chase

alleges that direct evidence of the parties negotiating history does not exist and this

privileged material provides indirect evidence.  While this material may be relevant,

under the Trust's proposal it is neither central nor vital to Chase's defense.  Chase's

need is insufficient for at issue waiver under California law.

Use of attorney testimony presents a slightly more complicated issue.  Under

*Stovall*, any attorney testimony would be considered to waive privilege.  However, as

noted above, *Stovall* is not binding precedent in the Ninth Circuit and useful only for its

persuasive value in applying the California standards for "at issue" waiver of attorney-

client privilege.  The Trust's proposal would limit the attorney testimony to non-

privileged communications between the two sides or with the Court, and would not allow

attorney testimony regarding issues protected by the attorney-client privilege or the

work product doctrine.   Thus, privileged material would not be placed directly at issue

and there is no waiver under California law.

Chase's objects to the attorney testimony because the attorney-client privilege

and the work product doctrine prevent Chase from obtaining material that could be used

to rebut the attorneys' testimony.  In particular, Chase argues that the Trust's attorney-

witnesses would choose not to refresh their recollections with privileged material, to

avoid reading the documents in their files that would contradict their favorable

recollections (Transcript of August 8, 2014 hearing (AP Dkt. 191) at 16:16-21).  (Not

using privileged documents to refresh memory for testimony would also avoid potential

waiver of privilege under Federal Rule of Evidence 612, which provides that when a

witness uses documents to refresh memory before testifying, the adverse party is

entitled to have the writing produced if the court decides justice so requires.)  The limits

proposed by the Trust do address this issue.  The attorneys would be testifying only

about non-privileged communications between the two sides or with the Court, thus the

most direct rebuttal evidence would be non-privileged documents.

**Federal Law on "at issue" Waiver of Work Product Privilege**

Pursuant to Rule 26(b)(3)(A), non-opinion work product must be produced upon a showing of substantial need and undue hardship.  The Ninth Circuit has held that "opinion work product may be discovered and admitted when mental impressions are at issue in a case and the need for the material is compelling."  *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir. 1992)(citations omitted)(bad faith insurance claim settlement case:  strategy, mental impression and opinion of insurer's agents concerning handling of claim are "directly at issue").

However, the Ninth Circuit has recently stated that opinion work product is "virtually undiscoverable"

> "Opinion work product" represents the core types of work product protected under Hickman, namely an attorney's mental impressions, conclusions, opinions, or legal theories developed in anticipation of litigation. *See Deloitte*, 610 F.3d at 136. It "is virtually undiscoverable." *Id.* at 135 (*quoting Director v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307, 326 U.S. App. D.C. 332 (D.C. Cir. 1997)).

*Republic of Ecuador v. Mackay*, 742 F.3d 860, 869 n.3 (9th Cir. 2014).  Furthermore, at issue waiver of work product requires more than at issue waiver of attorney-client privilege.  *See Feld v. Fireman's Fund Ins. Co.,* 2013 U.S. Dist. LEXIS 179538, at *20-21 (D.D.C. Dec. 23, 2013)(citing *Sealed Case*, 676 F.2d at 814 n.83); *Permian Corp. v. United States*, 665 F.2d 1214, 1219 (D.C. Cir. 1981); *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

In sum, non-opinion work product relevant to the parties' intent is governed by a more relaxed standard of substantial need and undue hardship, while the threshold for 'at issue' waiver of opinion work product is higher than either attorney-client communication or non-opinion work-product.  As there are no cases that apply the work

product "at issue" waiver standards to this situation, the Court will apply the same

reasoning as in attorney-client communication.

### Issues 3 and 4: Common Interest Doctrine

Chase argues that by sharing any documents with the Creditors' Committee and

members of the Oversight Committee, the Trust has expressly waived any privilege,

and the common interest doctrine does not apply to protect the documents against such

express waiver.

### Work Product

The common interest doctrine may not be needed to protect work product from

express waiver under federal law:

> Because the purpose of the work product doctrine is to prevent disclosure of
> privileged documents to an adversary, the privilege is only waived when
> disclosure enables "an adversary to gain access to the information."

*Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423-27 (3d Cir.

1991); *United States v. Stewart*, 287 F. Supp. 2d 461, 469 (S.D.N.Y. 2003); *Samuels v.

Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994); *In re Oracle Sec. Litig.,* 2005 U.S. Dist.

LEXIS 46931, at *26-27 (N.D. Cal. Aug. 5, 2005).  The same is true under California

law:  work product privilege "is not waived except by a disclosure wholly inconsistent

with the purpose of the privilege, which is to safeguard the attorney's work product and

trial preparation." *Raytheon Co. v. Superior Court*, 208 Cal. App. 3d 683, 689 (Cal. Ct.

App. 6th Dist. 1989); *OXY Resources California LLC v. Superior Court*, 115 Cal. App.

4th 874, 891 (Cal. Ct. App. 1st Dist. 2004); *BP Alaska Exploration, Inc. v. Superior

Court,* 199 Cal. App. 3d 1240, 1261 (Cal. Ct. App. 5th Dist. 1988)(work product is waived

by disclosure to one with no interest in maintaining its confidentiality); 2 Jefferson, Cal.

Evidence Benchbook (2d ed. 1982) § 41.2 (same).

Thus, unless the Creditors' Committee or the members of the Oversight

Committee with which the Debtors or the Trust shared documents were adversaries

with the Debtors or the Trust, or were likely to pass the documents to an adversary, the

work product would not be waived by disclosure to them.


**California Law on Common Interest Doctrine**

The California common interest doctrine, which is more limited than the federal

version, is based on California Evidence Code sections 912 and 952:

> A disclosure in confidence of a communication that is protected by a privilege
> provided by Section 954 (lawyer-client privilege) … , when disclosure is
> reasonably necessary for the accomplishment of the purpose for which the
> lawyer … was consulted, is not a waiver of the privilege.

Cal. Evid. Code, §912(d).

> As used in this article, 'confidential communication between client and lawyer'
> means information transmitted between a client and his or her lawyer in the
> course of that relationship and in confidence by a means which, so far as the
> client is aware, discloses the information to no third persons other than those
> who are present to further the interest of the client in the consultation or those to
> whom disclosure is reasonably necessary for the transmission of the information
> or the accomplishment of the purpose for which the lawyer is consulted, and
> includes a legal opinion formed and the advice given by the lawyer in the course
> of that relationship.

Cal. Evid. Code § 952.  (Although these provisions explicitly deal with the attorney-client

privilege, they have been applied to waiver or nonwaiver of the work-product doctrine.

*Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889, 915 (Cal. Ct. App. 5th Dist.

2013); *OXY Resources*, 115 Cal. App. 4th 874, 891.)

> This, consequently, is the limited manner in which California has adopted a rule
> preserving privileges when parties with common interests disclose privileged
> communications to each other. The privilege survives disclosure to a party with a

common interest only if it is necessary to accomplish the privilege holder's purpose in seeking legal advice. The doctrine extends no further than this because in California there is no independent statutory joint defense or common interest privilege, and California courts are not authorized to establish one.

*Citizens for Ceres*, 217 Cal. App. 4th at 916-917 (referring to Cal. Evid. Code §911); *see also OXY Resources*, 115 Cal. App. 4th at p. 891). An expectation of confidentiality is also required. *Id*.

Thus, the common interest doctrine would preserve privilege if the documents were shared with the expectation of confidentiality and sharing was necessary to accomplish the privilege holder's purpose in seeking legal advice. Documents are routinely shared with the Creditors' Committee (as well as other interested parties such the Oversight Committee) in bankruptcy both with an expectation of confidentiality and as necessary to accomplish the debtor's purpose in retaining counsel in chapter 11 (confirming a plan of reorganization). The federal cases described below, as well as the Court's own experience, strongly confirm the need for debtors to be able to share information with such committees and interested parties without waiving privilege.

**Federal Law on Common Interest Doctrine**

Federal law on the common interest doctrine is most likely inapplicable for the reasons noted above: (i) at most it would apply only to work product doctrine and (ii) privilege regarding work product was probably not waived. In the event federal law does apply, it offers each side one advantage over California law.

In Chase's favor, the Ninth Circuit recently added the requirement of an agreement to pursue a joint strategy: a communication will not waive attorney-client privilege if the parties "make the communication in pursuit of a joint [legal] strategy in accordance with some form of agreement—whether written or unwritten." *Pac. Pictures*

*Corp. v. United States Dist. Court*, 679 F.3d 1121, 1129 (9th Cir. 2012)(attorney-client

privilege at issue).  Chase has argued that the parties have not entered into such an

agreement, while the Trust has argued that such an agreement does exist.  The Court

will probably not need to reach this issue, as federal law and its requirement of an

agreement do not appear to apply.  In any event, it is not clear if that agreement

requirement would apply in the work-product context where the standard for a common

interest is more relaxed:

> For work-product immunity to be preserved, "[t]he shared interest may be
> only financial or commercial in nature," and no waiver will occur so long as there
> is a reasonable basis for believing that the common interest recipient will keep
> the disclosed material confidential.

*Lennar Mare Island, LLC v. Steadfast Ins. Co.,* 2014 U.S. Dist. LEXIS 48509, at *15-18

(E.D. Cal. Apr. 7, 2014).

In the Trust's favor, a plethora of federal courts have found a common interest

between debtors and creditors' committees (and other participants in bankruptcy):

> In the context of a bankruptcy, the common-interest privilege has been applied
> between a debtor and (1) an ad hoc committee; (2) a prepetition future asbestos
> claims representative; (3) a creditors [sic] committee; and (4) an affiliate
> company. *See, e.g., In re Tribune Co.,* 2011 Bankr. LEXIS 299, 2011 WL 386827
> at *4; In re Leslie Controls, 437 B.R. at 496; *Kaiser Steel Corp. v. Frates*, 84 B.R.
> 202, 205 (Bankr. D. Colo. 1988); In re Quigley Co., Case No. 04-15739 (SMB),
> 2009 Bankr. LEXIS 1352, 2009 WL 9034027, *1 (Bankr. S.D.N.Y. Apr. 24, 2009).

*In re Cherokee Simeon Venture I, LLC*, 2013 Bankr. LEXIS 4839, 8-9 (Bankr. D. Del.

May 31, 2013).  Several courts have applied the common interest doctrine on the theory

that the Committee's role requires that debtor be able to share information without

waiving privilege and that the Debtor and the Committee share the common obligation

of maximizing the estate.  *In re Imperial Corp*., 179 F.R.D. 286, 289 (S.D. Cal. 1998);

*Value Prop. Trust v. Zim Co. (In re Mortgage & Realty Trust),* 212 B.R. 649, 653 (Bankr.

C.D. Cal. 1997); *In re Kaiser Steel Corp.,* 84 B.R. 202, 206 (Bankr. D. Colo. 1988).

The Trustee has properly asserted the common interest doctrine as between the debtors, the Committee, and the Banks here. It is uncontested that, in connection with resolving their issues for final approval of the DIP financing, the debtors, the Committee and the Banks agreed to join forces for the ultimate purpose of confirming a liquidating plan of reorganization that recovered and distributed the debtors' assets, and arranged for the pursuit of causes of action held by the estate.

*Osherow v. Vann (In re Hardwood P-G, Inc.),* 403 B.R. 445, 461 (Bankr. W.D. Tex. 2009); *see also Village at Lakeridge, LLC v. United States Bank N.A. (In re Village at Lakeridge, LLC),* 2013 Bankr. LEXIS 2329, at *36 (B.A.P. 9th Cir. Apr. 5, 2013)(debtor and claim holder "shared a common interest in that they both wanted to obtain confirmation of the plan of reorganization").

## Issue 5:  Improperly Redacted Documents

Chase contends that the Trust has improperly redacted certain documents.  This issue does not require resolution of any questions of law.

## Conclusions

The Court has reached the following conclusions on the questions of law raised in the Stipulation:

Issue 1:  The "mere transmission" of documents by the attorney to a client would be covered by California's attorney-client privilege to the extent that the fact of transmission itself merits protection as attorney-client communication.

Issue 2:  "At issue" waiver requires that attorney-client communications be so vital to Chase's defense that equity requires their disclosure, which appears to be the case where the individual intent of, or unilateral mistake by, the Debtors and the Creditors' Committee are at issue.  Such waiver should be drawn as narrowly

as possible.  The Trust's proposal to limit its claims to ones based on mutual mistake or intent and its evidence to communication between the sides or with the Court (as opposed to internal), as outlined above, does remove the privileged documents from being directly at issue and vital to Chase's defense.   By adopting this proposal, the Trust may avoid "at issue" waiver.  (Chase's proposal, on the other hand, is far broader than necessary to avoid waiver and will not be used.)

The Trust drafted its proposal as binding both the Trust and Chase, but the Court will not require Chase to bind itself to these restrictions.  Chase may adopt them, which would certainly simplify this proceeding, or it may refuse to do so, knowing that it risks waiving privilege by presenting defenses based on individual intent/mistake, privileged evidence or attorney testimony regarding privileged evidence.

The Court would apply the same reasoning to "at issue' waiver of work product.

Issues 3 & 4:  Work product privilege was not waived by disclosure to the Creditors' Committee or the members of the Oversight Committee, unless they were adversaries with the Debtors or the Trust, or were likely to pass the documents to an adversary.  Thus, common interest doctrine is not needed to protect work product from waiver.

Under applicable California law, the common interest doctrine would preserve privilege to the extent that the documents were shared with the expectation of confidentiality and sharing was necessary to accomplish the privilege holder's purpose in seeking legal advice, which would appear to be the

1  case with respect to the Creditors' Committee and the Oversight Committee.

2  As a result, the Trust's claims, defenses and evidence will be restricted as set forth in its

3  proposal quoted above and the Motion will be denied.

4  ###

Date: September 11, 2014

_____
Geraldine Mund
United States Bankruptcy Judge